NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| RANDY JACKSON, | : |
| Petitioner, | :    Civil Action No. 16-7847(MCA) |
| v. | :    **OPINION** |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | : |
| Respondents. | : |

**MADELINE COX ARLEO, District Judge**

## I.   INTRODUCTION

This matter has been opened to the Court by the pro se Petition pursuant to 28 U.S.C. § 2254 (ECF No. 1 ("Petition")) of Randy Jackson ("Petitioner"). For the reasons explained below, the Court will deny the Petition with prejudice and will deny a certificate of appealability.

## II.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A. Factual Background

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] relies upon the fact recitation by the Appellate

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have

Division of the Superior Court of New Jersey ("Appellate Division") in *State v. Jackson*, Indictment No. 07-06-2174, 2011 WL 691642, at *1-2 (N.J. Super. Ct. App. Div. Mar. 1, 2011).

During the late evening of December 1, 2006, Petitioner, Petitioner's girlfriend Nyiaka James ("James"), Petitioner's sister Latiesha Lynch ("Lynch"), Lynch's boyfriend Hassan Hutchins ("Hutchins"), James's friend Tianna Barclay ("Barclay"), and Petitioner's step-brother Mario Davis ("Davis") went to a night club in Orange, New Jersey. *Jackson*, 2011 WL 691642, at *1. When the club closed at 2:00 a.m. on December 2, 2006, the six individuals got into two cars. The first was driven by Petitioner, with James in the passenger seat and Lynch and her boyfriend Hutchins in the back seat. The second car was driven by Barclay, with Davis in the passenger seat. At the time of their departure from the club, Lynch and Hutchins were arguing, and the fight continued after they entered Petitioner's car. *Ibid*. After the car had proceeded for a short distance, defendant, believing that Hutchins had assaulted Lynch, stopped and ordered Hutchins out of the vehicle. Petitioner followed, and an argument ensued, during which Petitioner shot Hutchins, hitting him twice. Barclay

---

the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

witnessed at least one of the shots and confirmed that Petitioner -- not Davis -- fired the shots. *Ibid.*

After the shooting stopped, Lynch went to assist Hutchins, who was lying on the ground. James left Petitioner's car and drove off with Barclay in the second vehicle. However, police -- responding almost immediately to the scene -- quickly intercepted the women. *Id.* at *2. Similarly, Petitioner sought to depart in the first car, but also was stopped by the police. According to Officer Richard Adrianzan, who was the first officer to respond to the scene, Petitioner appeared unexcited and unimpaired. Officer Fidel Hunter described Petitioner as "nonchalant." *Ibid.*

Hutchins, who was still alive, was transported to the hospital, where he was pronounced dead at 3:15 a.m. An autopsy revealed that two bullets had struck him, one in the thigh and the other in the back. The latter bullet had traveled through his chest and larynx, lodging in his neck. *Ibid.* (These December 1, 2006 events described *supra* are referred to as the "Incident.")

Upon questioning at the scene, Petitioner asserted that Hutchins had been shot in a drive-by shooting. However, when Petitioner could not support his version of events with any details, the police became suspicious and started searching the scene for a weapon. While searching, Officer Hunter overheard Lynch scream at Petitioner, "she [sic] didn't have to do that, you could have just got back in the car, you didn't have to shoot." Soon

3

thereafter, Officer Hunter located the weapon -- a Charter Arms Undercover 39 Special revolver containing five empty shell casings -- on the sidewalk not far from Hutchins's body. Subsequent forensic testing confirmed that the bullet found in Hutchins's neck had been fired from the revolver found at the scene. *Ibid.*

Following the gun's discovery, Petitioner was arrested for unlawful possession of a weapon and taken to police headquarters. The others were also taken there for questioning. *Ibid.*

During the subsequent police investigation, both James and Barclay initially gave false statements, but later implicated Petitioner. Photo identifications were conducted, and both women identified defendant as the shooter. *Ibid.*

At approximately 8:00 p.m., a warrant was issued for Petitioner's arrest on murder charges. Shortly thereafter, police took him to an interview room. Police administered *Miranda* warnings to him. Christopher Smith, a detective from the Essex County Prosecutor's Office, interviewed Petitioner in the company of Willie Coley, an Orange police detective. After police confronted Petitioner with the incriminating evidence obtained from the witnesses to the Incident, he confessed. Police next asked him to provide a recorded statement. After agreeing and again waiving his *Miranda* rights, Petitioner did so, stating in part (Petitioner's "Statement"):

Well, we ... was all at the club, we was

4

drinking and so forth. It was time to go home, dude started grabbing up my sister and he been like on her almost like all day since I met him, you know what I mean? And I'm trying to see what it is, you know, I mean that's wrong and everything. So I go over there, I just-I had talked to him about talking to my sister like that, you know what I'm saying? And he-

Then we leaves and everything, he jumped on her one more time, man you know what I'm saying? Getting out of the car, I forget how that happened, you know what I mean? How he - - because he was in my vehicle and I don't remember, I don't know why we got out of the vehicle. I think -- I think I said something like hey, get out my car. You know what I'm saying? Leave my sister alone. And then we had words and everything.

. . .

When I - when I - me and the guy.

. . .

You know? And - and I did it, man.

. . .

I shot the guy.

*Jackson*, 2011 WL 691642, at *2-3; ECF No. 13-2 at 13-34.

In June 2007, a grand jury charged Petitioner with: murder in violation of New Jersey Stat. Ann. § 2C:11-3A (count one); unlawful possession of a handgun in violation of New Jersey Stat. Ann. § 2C:39-5B(count two); and possession of a firearm for an unlawful purpose in violation of New Jersey Stat. Ann. § 2C:39-4A (count three). (ECF No. 12-8.)

Petitioner was tried before a jury in September – October 2008. (ECF Nos. 11-8 - 12-3.) The jury found Petitioner guilty on all counts. (ECF No. 12-9.)

## B. Procedural History

The Honorable Betty J. Lester, J.S.C. sentenced Petitioner on December 6, 2008 as follows: (1) thirty years without parole eligibility for murder (count one); and (2) five years for third-degree unlawful possession of a weapon (count two), to be served concurrently with Petitioner's sentence for murder. (ECF No. 12-4.) The conviction for possession of a weapon for an unlawful purpose was merged into the murder conviction. The judge found aggravating factor 9 (the need for deterrence) and mitigating factor 3 (that Petitioner acted under strong provocation). *Jackson*, 2011 WL 691642, at *3 (citing N.J. Stat. Ann. § 2C:44-1a(9) and -1b(3)). The judge found the aggravating and mitigating factors to be in equipoise. *Id.* at *3.

On or about March 10, 2010, Petitioner directly appealed his conviction. His public defender filed a brief in support, and Petitioner submitted two pro se letter briefs. (ECF No. 12-11, 12-12, 12-14.) On March 1, 2011, the Appellate Division affirmed his conviction. *State v. Jackson*, 2011 WL 691642, at *1-2 (N.J. Super. Ct. App. Div. Mar. 1, 2011). On June 30, 2011, the New Jersey Supreme Court denied certification. *State v. Jackson*, 22 A.3d 973 (N.J. 2013).

6

On or about August 11, 2011, Petitioner filed petition for post-conviction relief ("PCR"). (ECF No. 13-1.) On October 25, 2013, the Honorable Alfonse J. Cifelli, J.S.C. held a PCR hearing and denied relief. (ECF Nos. 12-7 and 13-4.)

On or about April 24, 2014, Petitioner appealed denial of PCR. (ECF No. 13-5.) (ECF No. 13-6 and 13-7.) On January 12, 2016, the Appellate Division affirmed the PCR denial. *State v. Jackson*, No. A-4037-13T2, 2016 WL 9694380, at *1 (N.J. Super. Ct. App. Div. Jan. 12, 2016). On May 6, 2016, the New Jersey Supreme Court denied certification. *State v. Jackson*, 137 A.3d 1198 (N.J. 2016).

On October 18, 2016, Petitioner filed his § 2254 Petition. (ECF No. 1 at 19.) The Petition sets forth five claims: (1) the trial court's improper denial of, and the trial attorney's ineffective assistance of counsel ("IAC") with respect to, Petitioner's motion to suppress his Statement (ECF No. 1 at 7; ECF No. 1 at 27); (2) deprivation of Petitioner's constitutional right to cross-examination (ECF No. 1 at 9; ECF No. 1-1 at 7-8); (3) deprivation of his constitutional right to testify on his own behalf (ECF No 1 at 10; ECF No. 1-1 at 8-9); (4) trial court error by failing to sua sponte instruct the jury on self-defense (ECF No. 1 at 12; ECF No. 1-1 at 9-10); and (5) the trial court's improper decision regarding, and the trial counsel's IAC concerning, the State's motion to redact portions of Petitioner's Statement. (ECF No. 1 at 14; ECF No. 1-1 at 11-12.)

## III.   **STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003). District courts must afford great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where state courts have adjudicated a claim on the merits, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). *See Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing 28 U.S.C. § 2254(d)).

Federal law is "clearly established" for these purposes where it is clearly expressed in "only the holdings, as opposed to the

8

dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. With regard to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington*, 562 U.S. at 100. "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* at 102-03. Where a

petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "when the relevant state-court decision on the merits ... does not come accompanied with ... reasons ... [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## IV.   ANALYSIS

### A. Ground One: Ineffective Assistance Of Counsel

Ground One argues that "trial counsel failed to present an expert witness at th[e] [*Miranda*] hearing to support [Petitioner's] contention that his statement was not voluntary." (ECF No. 1 at 7; ECF No. 1-1 at 7.) Specifically, Petitioner argues that had trial counsel presented Dr. Daniel P. Greenfield at the *Miranda* hearing, the trial court would have either granted Petitioner's motion to suppress his statement or would have reached a different conclusion (the "IAC Claim"). (ECF No. 1 at 1; ECF No. 1-1 at 7.)

10

### 1. *Miranda* Hearing

On May 22, June 12, July 10, and July 22, 2008, the Honorable Betty J. Lester, J.S.C. held hearings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), to determine whether police properly advised Petitioner of his rights at the time of his arrest. The court considered whether to permit the prosecution to introduce into trial evidence the Petitioner's Statement. (*See* ECF Nos. 11-1 at 8; 11-2; 11-3; and 11-4.) The testimony offered by the State and by Petitioner at the *Miranda* hearing sharply diverged as to the knowing and voluntary nature of the Statement.

*State's Witness*: Detective Christopher Smith of the Essex County Prosecutor's Office testified for the State. (ECF No. 11-1 at 10-22.) He testified that he did not speak to Petitioner at police headquarters until after a warrant for his arrest was obtained at approximately 8:00 p.m. (*Id.* at 26-28.) Following administration of *Miranda* warnings at 8:12 p.m., a preliminary interrogation resulted in Petitioner's confession. (*Id.* at 18, 29-31, 34, 39.) Following the re-administration of *Miranda* warnings, at 8:45 p.m. Petitioner commenced his recorded Statement. (*Id.* at 30, 34.) Detective Smith denied that Petitioner was intoxicated at the time of his Statement (*id.* at 37), "a statement borne out by Petitioner's confession itself." *Jackson*, 2011 WL 691642, at *3. Detective Smith did not recall Petitioner stating that he was under

the influence of Ecstasy, and his confession did not disclose such drug use. (ECF No. 11-1 at 35, 39.)

*Defense Witnesses*: Petitioner called three witnesses on his behalf at the *Miranda* hearing, including himself. (ECF No. 11-3 at 4-35.)

(a) *Petitioner*: Petitioner testified that, while confined at police headquarters, he: received only coffee; was repeatedly interrogated; was deprived of sleep; was inadequately dressed and thus cold; was kept incommunicado; and he was manhandled, threatened and intimidated. *Jackson*, 2011 WL 691642, at *4. Petitioner stated that, on the day of the Incident, he had: consumed almost a gallon of cognac; taken one and one-half Ecstasy pills; and consumed two Long Island iced teas. *Ibid*. He testified that, at the time of his Statement, he was seeing flashes and was under the influence of drugs and alcohol. (ECF No. 11-2 at 50.) However, his *Miranda* testimony also presented inconsistencies regarding custodial interview times and whether he had been fed. (*Ibid.*) Petitioner claimed that police repeatedly denied his requests to call his mother and his attorney. (ECF No. 11-2 at 50; ECF No. 11-3 at 14.) He stated that he did not recall reading the *Miranda* warnings, and although he signed the form, he did not remember initialing the warnings. (ECF No. 11-2 at 51.) Petitioner also testified that his confession was coached by the police, who repeatedly stopped the tape to do so. (ECF No. 11-3 at 14.)

Petitioner testified that Lynch was the person who killed Hutchins. (ECF No. 11-3 at 26-27, 34.) Conversely, in Petitioner's audiotaped Statement, he had confessed that he was the person who shot Hutchins. (ECF No. 12-7 at 34-35.)

(b) *Petitioner's Mother*: Petitioner's mother corroborated his testimony regarding his drinking and his intoxicated state the day of the Incident. (ECF No. 11-2 at 29-30.)

(c) *Detective Coley*: Police officer Detective Willie Coley recalled Petitioner mentioning that he had been drinking prior to the murder. However, he did not smell alcohol on Petitioner at the time of his interview and confession. (ECF No. 11-2 at 23.) The Detective did not recall Petitioner mentioning consumption of Ecstasy. (*Ibid.*) Contrary to Petitioner's testimony, Detective Coley denied that he had previously arrested Petitioner and that he had ever broken Petitioner's jaw.[2] (*Id.* at 25-26.) The Detective stated that he sat across from Petitioner during his interrogation. The Detective denied standing behind or to the side of Petitioner in a threatening manner as Petitioner claimed. (*Id.* at 20, 51.)

## 2. *Miranda* Hearing Decision

In a lengthy and thorough oral opinion, Judge Lester denied Petitioner's motion to suppress his Statement. (ECF No. 11-5 at 5-

---

[2] Additional evidence at the *Miranda* hearing suggested that Petitioner's jaw had been broken in a gang assault, leading to his arrest on a weapons charge on the date of the Incident. (ECF No. 11-4 at 8-9.)

13

6.) The judge determined that Petitioner: (1) knowingly and intelligently waived his *Miranda* rights, despite his prior consumption of alcohol; and (2) voluntarily provided his Statement. (ECF No. 11-4 at 11.) In explaining the basis of the court's ruling, Judge Lester made several findings.

For example, in determining that Petitioner was not intoxicated when he gave his Statement, Judge Lester compared: (1) the manner in which Petitioner spoke when giving his taped Statement, with (2) his testimony at the *Miranda* hearing. (ECF No. 11-4 at 7.) The judge detected no evidence of impairment. (*Ibid.*) The judge observed that Petitioner's responses during custodial interrogation were "instantaneous." (*Ibid.*) According to Judge Lester, Petitioner gave "[v]ery detailed answers in terms of describing the actual scene where the shooting occurred, who was present, who was standing where." (*Ibid.*) Judge Lester found acuity in, for example, Petitioner's discussion of title ownership when police asked him who owned the vehicle he was driving the night of the Incident. (*Id.* at 7-8.) The judge "found no evidence of slowness, slurring of words, delay in response, incoherency in substance, [or in]appropriateness of the answer to a question." (*Id.* at 8.) "In sum, the judge found no evidence of intoxication, sleep deprivation or anything of that nature that would support Petitioner's argument that waiver of his rights was not knowingly and intelligently made." *Jackson*, 2011 WL 691642, at *5.

As to the conflicting versions of alleged police brutality before and during Petitioner's custodial interrogation, Judge Lester noted that, toward the end of Petitioner's confession, Detective Smith asked: "All right, have you been treated fairly today?" Petitioner responded: "Yes, by both of you officers." (ECF No. 11-4 at 9-10.) The judge reasoned:

> I don't know why he would have included Detective Coley in that response if he was as fearful of him as he claimed he was because the question certainly did not require that he be included. He was simply ask[ed] had he been treated fairly today. The simple answer would have been yes. I would even understand if he didn't include that -- yes, but not by Detective Coley. But what I didn't understand was why he would have said -- made a point of saying yes, by both of you officers. That did not comport, in my view, with a defendant who is as fearful of this man as he claims to be.

(*Id.* at 10) (noting also that Petitioner had never reported the alleged police brutality, even after being moved to another jail).

Judge Lester noted also that Petitioner's credibility was also suspect because his testimony was "a little bit too legalistic ... if you read the seminal case law on voluntariness of statements, I don't think he missed a case in the type of testimony that he gave. Every type of abuse that could possibly b[e] the subject of a legal opinion was included in his testimony." (*Ibid.*)

For these reasons, Judge Lester denied the suppression motion because Petitioner "knowingly and voluntarily waived his rights":

> [T]he court finds, first of all, that the

15

defendant was properly given his rights. I am
not persuaded that he was tortured or taunted
in any way or questioned outside of this
record ... I am satisfied, based on the fact
that I don't feel that he was impaired in any
way [and] he understood what was said to him.

(ECF No. 11-4 at 11.)

## 2. Direct Appeal Of *Miranda* Hearing Decision

During direct appeal, the Appellate Division upheld the trial
court's findings of fact from the *Miranda* hearing that: (1) the
Statement was voluntary and (2) Petitioner knowingly and
intelligently waived his *Miranda* rights. *Jackson*, 2011 WL 691642,
at *1 and *6-7. The Appellate Division found that the record did
not support Petitioner's claim of intoxication. *Ibid.* The
Appellate Division also determined that there was "no basis to
conclude that [Petitioner's] decision to confess arose from an
overbearing of his will." *Id.* at *8.

## 3. Petitioner's IAC Claim During PCR Proceedings

Petitioner asserted the IAC Claim in his PCR petition. *State
v. Jackson*, No. A-4037-13T2, 2016 WL 9694380, at *1 (N.J. Super.
Ct. App. Div. Jan. 12, 2016.)[3] (*See also* ECF No. 12-7 at 29.) The
PCR brief submitted by Petitioner's counsel stated: "Dr. Daniel P.
Greenfield, MD, MPH, MS was recently retained to prove that an
expert could have helped substantiate Mr. Jackson's assertion that

---

[3] Petitioner did not raise the IAC Claim during direct appeal.
*Jackson*, 2011 WL 691642, at *1 and *6-7.

his statement was not voluntary." (ECF No. 13-1 at 26-27.) Dr.
Greenfield's report "opined essentially three things":

> First, that the [P]etitioner did not have a
> viable ... psychiatric defense at the time of
> the commission of the offense and/or trial;
>
> Second, that the [P]etitioner had the ability
> to knowingly and intelligently waive his
> rights at the time he confessed to the murder,
> but said waiver was not in fact voluntary;
>
> And, third, that the [P]etitioner remains
> competent to stand trial as legally defined.

(ECF No. 12-7 at 31-32.) The Honorable Alfonse J. Cifelli, J.S.C.,
rejected the IAC Claim because "even assuming arguendo that Dr.
Greenfield['s] [report] was available at the time of trial and he
was prepared to testify to same, I find absolutely no legal basis
under which his testimony would have been admissible." (Id. at 29-
33) (internal citations omitted).

The Appellate Division affirmed Judge Cifelli's rejection of
the IAC Claim because Petitioner had not shown prejudice under
Strickland v. Washington, 466 U.S. 668 (1984). Jackson, 2016 WL
9694380, at *4. The New Jersey Supreme Court denied certification.
State v. Jackson, 137 A.2d 1198 (N.J. 2016).

### 4. The § 2254 Petition's IAC Claim Fails On The Merits

To set forth a claim under Strickland, a petitioner must first
show that "counsel's performance was deficient. This requires [the
petitioner to show] that counsel made errors so serious that
counsel was not functioning as the 'counsel' guaranteed by the

Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an IAC claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial ... whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).

Even where a petitioner is able to show that counsel's representation was deficient, a petitioner must still affirmatively demonstrate that counsel's deficient performance prejudiced the defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. A petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "Because failure to satisfy either prong defeats an [IAC] claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's

18

claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002); *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Finally, when a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (internal quotation marks omitted) (emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of IAC claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 131 S. Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

In considering a *Miranda* suppression decision during habeas review, "[f]ederal habeas courts have an 'independent obligation' to determine whether a confession was voluntary." *Sweet v. Tennis*, 386 F. App'x 342, 345 (3d Cir. 2010) (quoting *Miller v. Fenton*,

474 U.S. 104, 112 (1985)). The state court's ultimate decision as to a *Miranda* waiver's voluntariness does not bind a habeas court. However, the federal court must "defer[] to state court factfinding as to 'subsidiary factual questions'" such as the credibility of the witnesses who testified at the suppression hearing. *Id.; see also Miller*, 474 U.S. at 110-12. Ultimately, if the habeas court concludes that the state court was correct in determining that, "under the totality of the circumstances, the confession was obtained in a manner compatible with the requirements of the Constitution," no habeas relief is warranted. *Sweet*, 386 F. App'x at 345 (quoting *Miller*, 474 U.S. at 112).

In the instant case, the Appellate Division first correctly set forth the governing constitutional standard for IAC claims. *Jackson*, 2016 WL 9694380, at *3 (citing *Strickland* and *State v. Fritz*, 519 A.2d 336 (N.J. 1987)). The Appellate Division then ruled that Petitioner did not satisfy *Strickland*'s prejudice prong. Dr. Greenfield's report was "prepared more than five years after the shooting" and "was based on the psychiatrist's review of some of the discovery as well as his evaluation and interview with [Petitioner] conducted years after the trial." *Jackson*, 2016 WL 9694380, at *4. Dr. Greenfield came to his "limited conclusion regarding voluntariness by accepting the facts as recounted to him by [Petitioner]." *Ibid*. However, Judge Lester had "explicitly rejected" that "version of Petitioner's interrogation." *Ibid*.

20

Therefore, even if counsel had offered Dr. Greenfield's report at the *Miranda* hearing, it would not have altered the result of Petitioner's case. *Ibid*. The report relied on "discredited facts set forth by [Petitioner] in his *Miranda* testimony." *Ibid*.

This Court finds that the Appellate Division did not unreasonably apply clearly established law as determined by the United States Supreme Court. During PCR proceedings, Petitioner did not demonstrate *Strickland* prejudice on the IAC Claim. Petitioner has not done so on habeas review, either, for at least the following two reasons.

First, it was objectively reasonable for the Appellate Division to affirm Judge Cifelli's ruling that the trial court would have found Dr. Greenfield's report inadmissible. "[W]hile [a] defendant has the right to present expert [psychological] testimony when it is designed to explain to the jury why a particular ... psychological condition would make [him] vulnerable to giving a false [and involuntary] confession," New Jersey courts have only allowed such testimony "where the defendant was found to be afflicted with a scientifically-recognized mental disorder which could potentially affect a confession and/or statement['s] ... voluntariness." (ECF No. 12-7 at 30 (citing *State v. Granskie*, 77 A.3d 505, 508-09 (N.J. Super. Ct. App. Div. Oct. 16, 2013); *State v. Free*, 798 A.2d 83, 91 (N.J. Super. Ct. App. Div. May 24, 2002); and *State v. King*, 904 A.2d 808, 817-18 (N.J. Super. Ct.

App. Div. Aug. 18, 2006)). That is not the case here. Dr. Greenfield's report expressly opined that Petitioner "did not have a viable ... psychiatric defense at the time of the commission of the offense and/or trial." (ECF No. 12-7 at 31.) The report did not show that Petitioner was suffering from a scientifically-recognized mental disorder at the time he confessed that rendered him unable to give his Statement voluntarily. (*See* ECF No. 12-7 at 31-32.) In these circumstances, there is no "reasonable probability that the result of the [case] would have been different," *see Hinton v. Alabama,* 134 S. Ct. 1081, 1083 (2014) (per curiam), had trial counsel offered Dr. Greenfield's report at the *Miranda* hearing. This is because it is objectively reasonable that Judge Lester would have found Dr. Greenfield's testimony inadmissible in the first instance. Accordingly, counsel's failure to proffer Dr. Greenfield did not alter the outcome of the *Miranda* hearing and does not demonstrate *Strickland* prejudice.

Second, even if counsel had proffered, and Judge Lester considered, Dr. Greenfield's report, it is unlikely that the PCR court would have found the Statement involuntary on the basis of the report. Under New Jersey law, "whether or not a defendant's waiver of rights is voluntary is strictly a legal determination to be made by the court after examining the totality of the circumstances." (ECF No. 12-7 at 29 (citing *State v. Galloway*, 628 A.2d 735, 747 (N.J. 1993) (internal citations omitted)).)

"Voluntariness [of a *Miranda* waiver] cannot be decided or proven by an expert or otherwise. It is a legal issue to be determined by the court. [T]he courts routinely reject efforts to present expert testimony concerning the phenomenon of false confessions." (ECF No. 12-7 at 30 (citing *Granskie*, 77 A.3d at 508-09).) After hearing extensive evidence as to the Statement's voluntariness, the state court found that Petitioner had voluntarily waived *Miranda* rights and confessed. (*See* ECF Nos. 11-1 at 8; 11-2; 11-3; and 11-4.) For example, listening to Petitioner's instantaneous responses during the audiotaped police interrogation, Judge Lester heard no indication that police pressured him to confess. *Jackson*, 2016 WL 9694380, at *4; ECF No. 11-1 at 21-22; ECF No. 11-4 at 7, 9-10.) Judge Lester also found no evidence of any impairment in Petitioner when he confessed. (ECF No. 11-4 at 7-8.) Judge Lester also found Petitioner's answer about the police's fair treatment of him persuasive in rebutting his claim of involuntariness. (*Id.* at 9-10.) In fact, Judge Lester discredited Petitioner's *Miranda* testimony entirely. (*Id.* at 9, 11.)

This Court must defer to these findings of fact regarding the voluntary, intelligent, and knowing nature of Petitioner's *Miranda* waiver.[4] Petitioner has not shown "by clear and convincing

---

[4] It is well-settled that where factual issues in state criminal proceedings are resolved after a full and fair hearing, a defendant is not entitled to another hearing on the same issues in a federal habeas corpus petition, *Wade v. Yeager*, 377 F.2d 841 (3d Cir.

evidence" that those factual conclusions were unreasonable in light of the available evidence. *See* 28 U.S.C. § 2254(e)(1); ECF No. 1-1 at 7. In the face of: (1) "the incredible and unreliable" version of facts that Petitioner himself presented (ECF No. 12-7 at 32); and (2) the extensive *Miranda* hearing record (*see* ECF Nos. 11-1 at 8; 11-2; 11-3; and 11-4), Petitioner has not shown that it is reasonably probable that an expert[5] would have changed Judge Lester's conclusions. The factual record created in state court compels the conclusion that the Statement was voluntary and admissible. This Court can fathom no reason to upset the state court findings. *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir. 2008) (state court decision to reject petitioner's request for suppression was not "contrary to" Supreme Court precedent, as state court adhered to the correct standard; further, "the suppression court was entitled to make the credibility determination that it

---

1967), *cert. denied,* 393 U.S. 893 (1968), provided the decision of the state court is fairly supported by the record, *United States ex rel. Shank v. Commonwealth of Pennsylvania,* 461 F.2d 61 (3d Cir. 1972). *See also* 28 U.S.C. § 2254(e)(1); and *Sweet,* 386 F. App'x at 345 (habeas courts defer to state court "subsidiary fact questions"). *See also Palacios-Rodriguez v. Buechele,* No. 15-414, 2018 WL 707600, at *7 (D.N.J. Feb. 2, 2018).

[5] The IAC Claim criticizes trial counsel's failure "to present an expert witness" at the *Miranda* hearing. (ECF No. 1-1 at 7.) Petitioner particularly names expert witness Dr. Greenfield in this regard. (*Id.*) This Court notes, however, that analysis of the IAC Claim herein does not change in any manner whether Dr. Greenfield specifically, or "an expert witness" generally, is used for purposes of discussion. Petitioner has not demonstrated *Strickland* prejudice as to counsel's failure to proffer either Dr. Greenfield or "an expert." (*Ibid.*)

did in the face of conflicting testimony").

The Court notes also that Petitioner has provided neither an affidavit from Dr. Greenfield regarding what testimony he would have given, nor an affidavit from any other expert as to Petitioner's mental ability to intelligently waive his *Miranda* rights. These failures further weaken Petitioner's IAC Claim. *See, e.g., Tolentino v. United States,* Civil Action No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *see also Duncan v. Morton,* 256 F.3d 189, 201-02 (3d Cir. 2001). With this insufficient evidence about purported inability to knowingly, intelligently, and voluntarily waive *Miranda* rights, combined with Judge Lester's credibility determinations as to Petitioner, this Court has no basis to find differently than the state courts did about Petitioner's intelligent, and voluntary waiver. Petitioner's § 2254 submissions provide no information sufficient to alter that conclusion. *See Sweet,* 386 F. App'x at 345. Therefore, this Court can only conclude that, had Dr. Greenfield testified before Judge Lester, his testimony would not have influenced the outcome of the *Miranda* hearing. Dr. Greenfield's report was based on Petitioner's version of facts that were soundly discredited by Judge Lester. Counsel's actions as to expert testimony caused no prejudice.

For all of these reasons, Petitioner has not shown that the state courts' rulings on the IAC Claim were contrary to, or an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1)-(2). Ground One of the Petition will be denied.

## B. **Ground Two: Confrontation Clause Claim; and Ground Five: Redactions to Petitioner's Statement At Trial**

*Ground Two*: Ground Two argues that the trial court violated Petitioner's "constitutional right to cross-examination" by allowing Dr. Lyla Perez to testify concerning an autopsy performed by her then-retired colleague, Dr. Nobby Mambo. (ECF No. 1 at 9; ECF No. 1-1 at 7-8 ("Confrontation Clause Claim").) Dr. Mambo, an associate medical examiner for the Regional Medical Examiner's Office ("M.E.'s Office") performed the autopsy on Hutchins on December 2, 2006 ("Autopsy"). However, Dr. Mambo had moved to Texas by the time of Petitioner's trial in 2008. (ECF No. 11-11 at 6, 9-10.) Dr. Lyla Perez, the chief medical examiner at the M.E.'s Office, testified at trial that Hutchins's cause of death was a gunshot wound to the torso. (*Id.* at 18-19.)

During Petitioner's trial, defense counsel voir dired Dr. Perez and declined to object to her expertise in forensic pathology. (ECF No. 11-11 at 8-9.) On direct, Dr. Perez testified that she: reviewed the reports prepared by Dr. Mambo; considered the notes and photos connected with the Autopsy; and conferred with Dr. Mambo about the Autopsy. (*Id.* at 10.) She testified about the findings and conclusions she reached after conferring with Dr. Mambo. (ECF No. 12-7 at 34; ECF No. 11-11 at 10, 19-20 and 22

(concurring with Dr. Mambo's Autopsy findings "within the bounds of reasonable medical certainty") and at 11-19.)

Defense counsel cross-examined Dr. Perez. (*Id.* at 19-24.) Defense counsel did not object to Dr. Perez testifying in place of Dr. Mambo. (*See* ECF No. 11-11 at 1-27; ECF No. 13-1 at 35.) The Autopsy report was not admitted into evidence. *Jackson*, 2016 WL 9694380, at *5.

Petitioner asserted the Confrontation Clause Claim in his PCR petition. (ECF No. 13-1 at 3, 33-40.) Judge Cifelli found the claim procedurally barred and substantively without merit: (1) N.J. Ct. R. 3:22-4[6] barred the claim because Petitioner had not raised it at trial; and (2) Dr. Perez's testimony was not improper under New Jersey law. (ECF No. 12-7 at 33.) Judge Cifelli explained that "an expert's testimony may be based on the work done or even hearsay evidence of another expert, particularly where, as here, the latter's work is supervised by the former." (ECF No. 12-7 at 33-34 (citing *State v. Stevens*, 345 A.2d 804, 805 (N.J. Super. Ct.

---

[6] "Any ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds: (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding ... A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence." N.J. Ct. R. 3:22-4(a)(1).

Sept. 25, 1975)).) Therefore, "even [if the Confrontation Clause Claim] was not procedurally barred, [P]etitioner's argument lacks merit and is not a basis for relief." (ECF No. 12-7 at 34.)

During Petitioner's appeal of denial of PCR relief, the Appellate Division declined to address the merits of the Confrontation Clause Claim because he had failed to raise or preserve that claim at trial. *Jackson*, 2016 WL 9694380, at *5.

*Ground Five*: Ground Five challenges the trial court's redactions to the Statement. Specifically, Petitioner argues that: (1) Judge Lester's ruling on the State's motion to "redact enormous amounts of the [S]tatement" was "fundamentally unfair and deprived the jury of the ability to adequately consider [Petitioner's] defenses"; and (2) counsel's "failure to object to [the] redactions deprived [Petitioner] of a fair trial and violated his constitutional right to present a defense." (ECF No. 1 at 14; ECF No. 1-1 at 11-12 ("Redaction Claim") (referring to redactions concerning Petitioner's "belief that the victim was in a gang, the victim was coming at him, the continued ill treatment by [Hutchins] against [Lynch], and [Petitioner's] remarks concerning [Lynch's] medical condition").)

Prior to trial, the State moved to redact portions of the Statement on the basis that it contained "a lot of inflammatory statements" and also irrelevant information (ECF No. 11-6 at 5, 9, 10 (referring to statements about "the victim ... [being] gang

28

affiliated" and what Petitioner's mother "would say about his [history of] heavy drinking").) After hearing arguments on September 19, 2008, the trial court issued a September 24, 2008 ruling that redacted portions of the Statement. (ECF No. 11-7.) Judge Lester appended the list of approved redactions to her decision ("Redactions"). (ECF No. 11-7 at 5-6; ECF No. 13-2 at 88-89.) Judge Lester explained the rationale for the Redactions:

> If there were answers to questions that part of the answer was necessary to understand why he gave the information or lack of information[,] I included it. If it was a statement that was not in response to any question, but really was just rambling sometimes, it was not permitted. When he was asked a specific question as [to] whether he knew something or not, and he gave an explanation as [to] why he didn't know it[,] I permitted to put the answer in context. So I think you'll pretty much see that theme. I did not permit statements concerning [the victim's] gang affiliation. That others might know and other people told him about. I did not permit statements of his sister's illness -- I didn't think it was relevant to anything.

(*Id.* at 5-7, 8 (offering to revisit particular Redactions during trial, if necessary, based on evolving circumstances).)

Petitioner asserted the Redaction Claim in his PCR petition. (ECF No. 13-1 at 67-70.) Judge Cifelli decided that N.J. Ct. R. 3:22-4 barred the claim because Petitioner had not raised it at trial or during direct appeal. (ECF No. 12-7 at 40-41.)

During appeal of denial of PCR, Petitioner argued that trial counsel "should not have acquiesced to [the Redactions]." *Jackson*,

2016 WL 9694380, at *1. The Appellate Division summarily rejected the claim because counsel's alleged errors "are questions of trial strategy and judgment and not proper grounds for PCR relief." *Jackson*, 2016 WL 9694380, at *4.

This Court finds that the Confrontation Clause Claim and Redaction Claim are procedurally defaulted and do not warrant habeas relief for that reason. Furthermore, Ground Two fails on the merits, as well.

## 1. Grounds Two And Five Are Procedurally Defaulted

Under the procedural default doctrine, a federal court may not grant habeas relief if the state court's decision rests on a prisoner's violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365-66 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). Federal courts may not consider the merits of such procedurally defaulted claims unless: (1) the petitioner establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of federal law; or (2) the prisoner demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d

Cir. 2000)); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate "cause" in this context, the circumstance must be something external to the petitioner that cannot fairly be attributed to him. *Leyva*, 504 F.3d at 366 (internal citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded ... efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate fundamental miscarriage of justice in this context, a petitioner must typically show "actual innocence." *Leyva*, 504 F.3d at 366 (internal citation omitted).

New Jersey Rule of Court 3:22-4[7] is an adequate and independent state procedural rule. It is clearly established and regularly followed in New Jersey. *See, e.g., Hamilton v. Nogan*, No. 16-5705, 2019 WL 4451440, at *11 (D.N.J. Sept. 17, 2019) (citing *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999) and *Egipciaco v. Warren*, No. 12-4718, 2015 WL 790108, at *3-4 (D.N.J.

---

[7] "Any ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds: (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey." N.J. Ct. R. 3:22-4.

Feb. 25, 2015)); *David v. D'Ilio*, No. 2017 WL 5951702, at *9
(D.N.J. Nov, 30, 2017) (citing *Cabrera*, 175 F.3d 307).

Grounds Two and Five are, therefore, procedurally defaulted.
When, as here, a state court decision plainly states that it is
relying on independent and adequate state law grounds to deny a
claim (*see* ECF No. 12-7 at 33 and 40-41; *Jackson*, 2016 WL 9694380,
at *5), a habeas court may not review such claim. *Coleman*, 501
U.S. at 737; *Walker v. Martin*, 562 U.S. 307, 316 (2011). In
addition, Petitioner has not shown cause and prejudice, or a
fundamental miscarriage of justice, to excuse these two claims'
procedural default. *See Coleman*, 501 U.S. at 729, 737.

Petitioner's violation of N.J. Ct. R. 3:22-4 did not result
from factors beyond his control. Petitioner himself submitted pro
se briefs during direct appeal and his moving PCR application.
(ECF No. 12-12; ECF No. 12-14; ECF No. 13-7; *Jackson*, 2011 WL
691642, at *1; *Jackson*, 2016 WL 9694380, at *3.) He did not
challenge Dr. Perez's testimony or the Redactions (ECF No. 12-
12.)[8] In his § 2254 Petition, traverse, and supporting materials,
he has neither asserted nor demonstrated: an external factor that
impeded his efforts with respect to these claims; actual prejudice;
or innocence of the crimes. (*See* ECF Nos. 1, 1-1, and 14.) The
election not to raise the Confrontation Clause Claim and Redaction

---

[8] His counsel's brief on direct appeal did not raise the Redaction
Claim, either. (*See* ECF No. 12-11.)

32

Claim in direct appeal or in his PCR application can fairly be attributed to Petitioner. This rules out his ability to demonstrate "cause" for excusing procedural default. *See Leyva*, 504 F.3d at 366. Moreover, since his § 2254 Petition (ECF No. 1) and traverse (ECF No. 14) do not demonstrate actual innocence, he has not shown a fundamental miscarriage of justice. *See Leyva*, 504 F.3d at 366.

Grounds Two and Five of the Petition will be denied as procedurally defaulted.

### 2. Ground Two Is Without Merit

Given that Judge Cifelli gave alternative bases for its ruling as to the Confrontation Clause Claim (*i.e.*, (1) procedural default; and (2) failure on the merits (*see* ECF No. 12-7 at 34)) this Court will address the Appellate Division's affirmance of Judge Cifelli's alternate merits-based rationale.[9]

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...." U.S. Const. amend. VI. "[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal citations and quotation marks omitted) (emphasis omitted). In *Crawford v.*

---

[9] Judge Cifelli dismissed the Redaction Claim (Ground Five) exclusively on the basis of N.J. Ct. R. 3:22-4. (ECF No. 12-7 at 40-41). The judge found that Ground Five's merits did not warrant "further consideration." (*Id.* at 41.)

*Washington,* 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination." *Id.* at 53-54. "[A] criminal defendant states a ... Confrontation Clause [violation] by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness ...'" *Van Arsdall*, 475 U.S. at 680 (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). "Even after *Crawford*, however, '[t]he [Confrontation] Clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Adamson v. Cathel*, 633 F.3d 248, 256 (3d Cir. 2011).

Judge Cifelli's decision -- that Dr. Perez's testimony did not violate the Confrontation Clause -- was consistent with governing Sixth Amendment precedent. The factually analogous case of *Buccheri v. Nogan*, No. 17-13373, 2019 WL 3712188, at *1 (D.N.J. Aug. 6, 2019) is instructive on this determination.

In *Buccheri*, Dr. Jennifer Amolat performed the victim's autopsy, and Dr. Lyla Perez (the same examiner in the instant case) examined the body, autopsy photos, and Dr. Amolat's report. *Id.* at *11. Both examiners determined that a gunshot wound to the victim's upper right chest was the cause of death. *Id.* at *3. The *Buccheri*

petitioner contended on habeas review that Dr. Perez's testimony at trial to "police report[s], statement[s], [and] witnesses" violated his Sixth Amendment right of confrontation. *Id.* at *11. The Appellate Division in *Buccheri* found no Confrontation Clause violation in Dr. Perez's testimony. *State v. Buccheri*, No. A-1086-11T4, 2013 WL 844362, at *9 (N.J. Super. Ct. App. Div. Mar. 8, 2013). The *Buccheri* habeas court found the Appellate Division's decision was not an unreasonable application of *Crawford* and its progeny. *Id.* at *13. The *Buccheri* habeas court explained:

> There is no question that Perez's expert opinion was informed by her review of Dr. Amolat's autopsy report, crime scene photographs, police reports, gunshot test pattern results, and reports prepared by other investigators present at the crime scene. Those materials were entirely proper for Perez to consider ...

*Id.*, at *13.

As in *Buccheri*, Dr. Perez was qualified as an expert at Petitioner's trial. (ECF No. 11-11 at 4-9.) She considered facts and data in forming her opinion that are reasonably relied upon by experts in the same field and are permissible under New Jersey law, including Dr. Mambo's report. (*See* ECF No. 11-11 at 10 and at 19-20 (Dr. Mambo's Autopsy report); *id.* at 10 (M.E. office's notes and photos connected with the Autopsy); *id.* at 12 (anatomical diagram used by the M.E.'s office); *id.* at 13 (photograph of the

victim's back with gunshot wound).) *See also* N.J.R.E. 703[10]; *State v. Torres*, 874 A.2d 1084, 1097-99 (N.J. 2005) ("[H]earsay statements upon which an expert relies are admissible, not for [the purpose of] establishing the truth of their contents, but to apprise the jury of the basis of the opinion reached") (internal citations omitted); *Agha v. Feiner*, 965 A.2d 141, 148 (N.J. 2009) (An expert "is generally permitted to detail for the trier of fact all of the materials, including films, test results, hospital records, and other experts' reports, on which he relied"). *See also Gant v. Giroux*, No. 15-4468, 2017 WL 2825927, at *1 (E.D. Pa. Feb. 27, 2017), *report and recommendation adopted*, 2017 WL 2797911 (E.D. Pa. June 28, 2017) (the medical examiner who performed the autopsy no longer worked for the state at time of trial, so the prosecution called as a witness another examiner who: was present when the autopsy occurred, reviewed the unavailable doctor's report, and independently arrived at his own determination of the cause of death; the state court found the testifying examiner was qualified to offer his expert opinion because "[n]othing in ... *Crawford* or *Melendez-Diaz* [*v. Massachusetts*], 557 U.S. 305 (2009)] clearly established that such a procedure violates the Sixth

---

[10] "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." N.J.R.E. 703.

Amendment"; the habeas court determined that counsel was not ineffective for failing to object to the examiner's testimony).

Under *Crawford* and its progeny, then, it was objectively reasonable for Judge Cifelli to determine that "there is nothing improper about [Dr. Perez testifying about the Autopsy performed by then-retired Dr. Mambo]." (ECF No. 12-7 at 33 (citing *State v. Dishon*, 687 A.2d 1074, 1087 (N.J. Super. Ct. App. Div. Feb. 6, 1997), *cert. denied*, 693 A.2d 112 (N.J. 1997)); and *State v. Stevens*, 345 A.2d 804, 805 (N.J. Super. Ct. Sept. 25, 1975) ("one expert's testimony may be based on the work done or hearsay evidence of another expert").)

Here, Dr. Perez gave her independent expert opinion based on her review of facts and data (*See* ECF No. 11-11 at 11-14 (the bullet "[w]ent through the chest, fractured the sixth rib, and went through the lung, through the blood vessel of the arm, and through the neck, the larynx, and projectile was recovered on the right side of the neck"); *id.* at 14 ("[t]he path of the bullet was back to front, left to right upwards"); *id.* at 14-15 (the victim was shot from the back); *id.* at 15 (the bullet was recovered from the victim's neck); *id.* at 16 (location of bullet entry and exit wounds on the victim; shot was fired from more than a foot and a half away); *id.* at 18 (medical intervention could not have prevented Hutchins's death due to "extensive damage and bleeding internally"); *id.* at 18-19 (cause of death was "[g]unshot wound of

torso and also extremity"); *id.* at 19 (the "[m]anner of death was ... homicide"). Moreover, and far more importantly, Dr. Perez did not offer the other information -- such as Dr. Mambo's report or the Autopsy photographs -- for the truth of the matters asserted therein. Rather, she testified about them in response to counsel's questions about the information on which she relied for her opinions. (ECF No. 11-11 at 10-13 and 19-20.) Viewing Dr. Perez's testimony in its entirety, it is clear that, in reaching her conclusion about death by homicide, she relied on her own evaluation of notes and photos connected to the Autopsy. (*Ibid.*) *See State v. Heisler*, 29 A.3d 320, 334 (N.J. Super. Ct. App. Div. 2011). Dr. Perez did not merely rely on Dr. Mambo's report but rather offered her own independent analysis of the Autopsy report, photos, and notes at trial. (ECF No. 11-11 at 10-13 and 19-20.) This Court perceives no Confrontation Clause violation in her testimony.

Petitioner has failed to demonstrate that the state court rulings on the Confrontation Clause Claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as established by the U.S. Supreme Court. Indeed, "there is no "clearly established Federal law" or "squarely established" rules concerning autopsy reports." *Johnston v. Mahally*, 348 F. Supp. 3d 417, 435 (E.D. Pa. 2018) (denying habeas relief to a petitioner who claimed that a medical examiner,

who was not directly involved in performing autopsies on two victims, violated the Confrontation Clause when he rendered expert testimony on the victims' cause and manner of death based on photographs of the corpses, toxicology reports, and the autopsy reports prepared by his former colleagues). *See also Johnson v. Lamas*, 850 F.3d 119, 133-34 (3d Cir. 2017). Petitioner, for his part, cites no clearly established U.S. Supreme Court precedent that supports a different conclusion.

### C. **Ground Three: Petitioner's Right To Testify**

Ground Three argues that trial counsel was deficient in failing to advise Petitioner of "the existence [and] nature" of his constitutional right to testify on his own behalf. (ECF No. 1 at 10; ECF No. 1-1 at 8-9 ("Testify Claim").)

At the October 2, 2008 charge conference, Judge Lester questioned Petitioner about his election not to testify:

> COURT: There's a charge that can be given to the jury that requests I discuss it with you in advance and receive your consent. Your attorney is asking that I bring to the jury's attention that you have elected not to testify in the case. The jury would be told it's your constitutional right to remain silent, and they may not consider for any purpose or any reason in arriving at your verdict the fact you did not testify, nor should that fact enter into their deliberations or discussions in any manner or at any time. Finally, you'll be told you're entitled to have the jury have evidence presented, and you're presumed innocent even if you do not elect to testify. This charge requires your permission to give. Did you discuss this with your attorney?

DEFENDANT: Yes.

COURT: And you have to decide that this charge should be given.

DEFENDANT: Yes.

(ECF No. 11-12 at 12-13.) During jury charges, Judge Lester instructed the jury, in pertinent part:

> As you know, Mr. Jackson elected not to testify at this trial. The jury is advised that it is his constitutional right to remain silent. And you must not consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify. That fact should not enter into your deliberations or discussions in any manner, ... and he is presumed innocent even if he chooses not to testify.

(ECF No. 11-12 at 51-52.)

Petitioner asserted the Testify Claim in his PCR petition. He alleged that both trial counsel and Judge Lester failed to apprise him of his right to testify on his own behalf. (ECF No. 13-1 at 3 and 41-53.[11]) Judge Cifelli held a hearing to determine whether defendant was so advised. *Jackson*, 2016 WL 9694380, at *2. After making extensive findings of fact, Judge Cifelli found that "the facts contained in the record" were "contrary" to those alleged in the Testify Claim. (ECF No. 12-7 at 34.) Judge Cifelli explained

---

[11] Petitioner's asserts the Testify Claim in his § 2254 Petition only with respect to counsel, not as to Judge Lester's colloquy about the right to testify. (*See* ECF No. 1-1 at 8-9; ECF No. 13-1 at 41-53.)

that, given Petitioner's audiotaped confession after waiving his *Miranda* rights, "[i]t's only reasonable to assume that a competent defense counsel would have advised the defendant not to testify. [T]he State possess[ed] an admissible confession." (*Id.* at 34-35.) The PCR court ruled that trial counsel was not ineffective as to the Testify Claim. (*Id.* at 36-37) (Petitioner "was fully cognizant of his right to testify or not testify, his right and/or ability to override defendant's counsel, and freely and voluntarily elected not to testify and not to override counsel's advice not to testify ... [His] choice not to testify was based on the contemplated defense that [Lynch] had shot the victim").) Furthermore, trial counsel credibly testified before the PCR court that he advised Petitioner about his right to testify. (*Id.* at 36.)

Petitioner raised the Testify Claim during appeal of PCR denial. *Jackson*, 2016 WL 9694380, at *2. The Appellate Division rejected the claim because counsel was not ineffective under *Strickland*. *Id.* at *3-4 (the PCR judge "found 'that counsel and petitioner specifically discussed whether or not it would be advantageous for the petitioner to testify on his own behalf'").

"The *Strickland* standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify." *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010) (internal citation omitted). Here,

Petitioner has failed to show that the state courts' determination on the Testify Claim was contrary to, or involved an unreasonable application of, *Strickland*. He has not shown that counsel's performance was unconstitutionally deficient.

Criminal defendants have an absolute right to testify on their own behalf. *United States v. Leggett*, 162 F.3d 237, 245–46 (3d Cir. 1998), *cert.* denied, 528 U.S. 868 (1999). That right at a criminal trial is an essential due process right. *Rock v. Arkansas*, 483 U.S. 44, 51 (1987). Only a defendant, and not his counsel on defendant's behalf, can make the decision whether to testify at trial. *Rock*, 483 U.S. at 53; *see also Leggett*, 162 F.3d at 245-46. Defense counsel, however, does have the duty to inform and advise his client about the right to testify. *See, e.g., United States v. Pennycooke*, 65 F.3d 9, 12 (3d Cir. 1995).

Petitioner here contends that counsel neither "told him not to testify" nor advised him that the choice was Petitioner's alone to make. (ECF No. 1-1 at 8-9.) However, Petitioner's own statements to the trial judge suggest otherwise. Such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977). Specifically, Petitioner told Judge Lester that: (1) he had discussed with his counsel (a) his election not to testify on his own behalf and (b) the content of the jury charge regarding his choice; and (2) he approved of the proposed jury charge. (ECF No. 11-12 at 12-13.) Judge Lester

charged the jury accordingly. (*Id.* at 51-52.) There were no objections. (ECF No. 11-11 at 120; ECF No. 11-12 at 51-52 and 70.) Based on this record, Petitioner knew that: he had the right to testify on his own behalf, if he so chose; and the decision was his to make. Had he taken the stand, Petitioner's testimony would have undermined the defense's strategy to argue that Lynch shot the victim. (*See* ECF No. 12-7 at 36, 37.) Furthermore, Petitioner's "prior inconsistent statement would certainly have been used to impeach [him], regardless of what version [he] provided at trial." (ECF No. 12-7 at 35.) On these facts, counsel's advice to Petitioner did not "f[a]ll below an objective standard of reasonableness." *See Jacobs*, 395 F.3d at 102.

The PCR court's factual findings, based on Judge Cifelli's determination of Petitioner's and counsel's credibility (*see* ECF No. 12-7 at 34-35), are entitled to considerable deference on habeas review. *See, e.g.*, *Dennis v. Sec'y, Penn. Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016). Judge Cifelli's Testify Claim decision was not based on factual determinations that were "objectively unreasonable in light of the evidence presented in the state-court proceedings." *See id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Petitioner has not presented clear and convincing evidence that the determinations were unreasonable or incorrect. (*See* ECF No. 1; ECF No. 1-1; *cf.* ECF

No. 12-7 at 36-37.) This Court must presume Judge Cifelli's findings to be correct. *See Dennis*, 834 F.3d at 281.

Furthermore, Petitioner provides this Court with no information as to how counsel allegedly "coerc[ed]" him into not testifying. Rather, Petitioner generally states only that counsel allegedly advised him not to testify. (ECF No. 1 at 10; ECF No. 1-1 at 8-9.) Petitioner provides little more than his own assertions that counsel override his desire to testify "to proclaim his innocence" and "to explain to the jury the coercive circumstances under which he provided the alleged voluntary statement that was used against him." (ECF No. 1-1 at 9 (emphasis in original).) However, the Third Circuit has held that vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court. *See United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Dawson,* 857 F.2d 923, 928 (3d Cir. 1988). This Court can and does do so here.

Petitioner has not shown *Strickland* prejudice from counsel's actions with respect to taking the stand on his own behalf. The Testify Claim fails on the merits. Ground Three will be denied.

## D. Ground Four: Self-Defense Jury Instruction

Ground Four argues the trial court erred by not sua sponte instructing the jury on self-defense and that trial counsel was "wholly ineffective" for not pursuing a self-defense jury charge.

(ECF No. 1 at 12; ECF No. 1-1 at 9-10 ("Self-Defense Claim").)

On or about February 25, 2008, defense counsel notified the prosecutor that Petitioner might raise self-defense at trial. (ECF No. 13-2.) At the October 1, 2008 charge conference, defense counsel suggested that he was considering whether to request that Judge Lester give a self-defense charge to the jury. Judge Lester asked counsel: "How do you get self-defense?" (ECF No. 11-11 at 130-31). Counsel replied that he thought the Statement included reference to the victim being armed. Counsel was unsure, though, and stated he would return to the issue the following day. (*Ibid.*) Judge Lester stated: "I don't think it fits self-defense, but I'll look at it anyway." (*Ibid.*) Defense counsel did not address self-defense at the October 2 continuation of the charge conference. (ECF No. 11-12 at 1-14 and 20 (addressing the charge of defense of others); ECF No. 13-1 at 60-61.)

At trial, Judge Lester charged the jury with respect to the use of force to protect another person (ECF No. 11-12 at 60-63.) The court explained the concept of self-defense only for contextual purposes of the jury's understanding of use of force to protect another person:

> So, first you need to understand the law of self-defense in order for you to understand the balance of this charge on defense of another.
>
> The statute concerning protection of self reads as follows: The use of force upon or

45

toward another person is justified when the
actor reasonably believes that such force is
immediately necessary for the purpose of
protecting himself against the use of
unlawful force by such other person on the
present occasion. In other words, self-
defense is the right of a person to defend
against unlawful force ...

There are different levels of a force a
person may use in his own defense to prevent
unlawful harm.

The defendant used that amount or degree of
force which he reasonably believes is
necessary to protect himself against harm
...

Now, this is -- this was not a defense of
self-defense. As I said, this was use or
force in protection of others, but you have
to have a self-defense charge first before
you understand this one.

(ECF No. 11-12 at 61-63.)

Petitioner raised the Self-Defense Claim in his PCR petition.
(ECF No. 12-7 at 37; ECF No. 13-1 at 56-63.) Petitioner argued
both that counsel was ineffective for not seeking a self-defense
charge and that Judge Lester improperly failed to sua sponte
provide such jury charge. (ECF No. 13-1 at 61-63.) Judge Cifelli
summarily rejected the claim, finding that there was "nothing to
suggest that self-defense was supported by the facts of this case.
[It] clearly would have been inappropriate for the jury to be so
instructed, either on request of counsel or by the court sua
sponte." (ECF No. 12-7 at 39-40.) Judge Cifelli surmised that self-
defense did not arise at the October 2 charge conference,

"presumably because both counsel and the court, having reviewed the matter, determined that the charge was inappropriate." (*Ibid.*)

Petitioner raised the Self-Defense Claim during appeal of PCR denial, but only as to trial counsel. (ECF No. 13-6 at 35-41.) The Appellate Division summarily rejected the claim. *Jackson*, 2016 WL 9694380, at *3.

This Court denies the Self-Defense Claim for at least the following two reasons.

(1) *Petitioner's challenge to Judge Lester's failure to sua sponte instruct on self-defense is without merit*: The Self-Defense Claim is not subject to federal habeas review, to the extent Petitioner asserts that Judge Lester's sua sponte instruction determination violated state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001). State court evidence-related determinations, such as not giving a sue sponte instruction, are normally matters of state law and are not reviewable in federal habeas proceedings. *See Engle v. Isaac*, 456 U.S. 107 (1982); *Henderson v. Kibbe*, 431 U.S. 145 (1977); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).

Rather, "[h]abeas relief for a due process violation concerning an absent or defective jury instruction is available only when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." *Albrecht*

*v. Horn,* 485 F.3d 103, 129 (3d Cir. 2008) (citing *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). "The only question [during habeas review] is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process ... not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Estelle*, 502 U.S. at 72 (citations omitted). *Accord Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. This means that "a petitioner seeking habeas relief based on a trial court's failure to give a particular instruction has an 'especially heavy' burden of demonstrating that the failure to give the instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment." *Kellum v. Pierce*, 24 F. Supp. 3d 390, 404 (D. Del. 2014) (citing *Henderson*, 431 U.S. at 154-55).

Under these well-established principles, the Due Process Clause is violated where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997). *See also In re Winship*, 397 U.S. 358, 364 (1970); *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011).

To determine whether Judge Lester's decision not to charge self-defense violated Petitioner's federal constitutional rights,

this Court must first determine whether, under New Jersey law, Petitioner was entitled to such an instruction. Under N.J. Stat. Ann. § 2C:3-4a, "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." To warrant a self-defense charge, "the actor must possess an actual, honest and objectively reasonable belief that the use of force is necessary, and the right to self-defense is only available to one who is without fault." *State v. Galicia*, 2010 WL 3834828, at *5 (N.J. Super. Ct. App. Div. Sept. 22, 2010) (internal citations omitted).[12] To sua sponte charge the jury on self-defense, a trial judge in New Jersey must determine that the evidence "clearly indicates" such a defense. *State v. Perry,* 590 A.2d 624, 640, 657 (N.J. 1991). *Accord State v. Walker*, 999 A.2d 450 (N.J. 2010).

The record here shows that it was objectively reasonable for

---

[12] The justification of self-defense is not available when a defendant uses deadly force, meaning "force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm," New Jersey Stat. Ann. § 2C:3-11b, unless the actor (1) "reasonably believes that such force is necessary to protect himself against death or serious bodily harm"; (2) did not provoke the use of force in the same encounter; and (3) cannot retreat or use non-deadly force. New Jersey Stat. Ann. § 2C:3-4b. The record suggests these statutory provisions were relevant under the evidence at Petitioner's trial.

Judge Lester to determine that the evidence did not "clearly indicate" Petitioner acted in self-defense when he shot Hutchins. Rather, Petitioner's Statement is glaringly inconsistent with the notion of "force immediately necessary" to protect Petitioner himself under § 2C:3-4a. That is, Petitioner confessed: "I did it, man ... I shot the guy[,]" when Hutchins "started grabbing up [Petitioner's] sister ... and jumped on her." See Jackson, 2011 WL 691642, at *2-3 (quoting Petitioner's Statement). Petitioner did not discharge the gun to "protect himself against the use of unlawful force" (see New Jersey Stat. Ann. § 2C:3-4(a)) by Hutchins. Rather, Petitioner confessed that he shot Hutchins to address the victim's conduct towards Lynch:

> I did it, man. I was trying to protect my sister ... I shot the guy ... I was only trying to protect my sister, that's all ... I just remember shooting him ... I'm sorry I did it ... [I]t's my sister, I was trying to save her, man ... I was just worried about my sister, I wasn't worried about nobody else ... [M]e trying to protect my sister from this ... I was just trying to protect my sister, you know what I'm saying? ... I'm not going to keep on making no more excuses, I did it, I was protecting my sister.

(ECF No. 13-2 at 22, 27, 28, 31, 32, and 33.)

Suffice it to say, then, the evidence and the inferences therefrom are inconsistent with Petitioner shooting Hutchins for "the purpose of protecting [*Petitioner*] *himself* against the use of unlawful force by [Hutchins]." See New Jersey Stat. Ann. § 2C:3-

4a (emphasis added). It accordingly follows, for substantially the same reasons found by Judge Lester and expressly noted by Judge Cifelli, that self-defense was not supported by the facts of this case. (*See* ECF No. 12-7 at 39.)

Petitioner has failed to demonstrate by clear and convincing evidence that these state court factual findings were incorrect. He offers no evidence, for example, that Hutchins was armed at the time of the incident or otherwise exhibited unlawful force towards Petitioner. Petitioner has not shown that he was actually in fear of harm to himself.[13]

Ultimately, then, no portion of the jury charge -- including the failure to sua sponte charge self-defense -- "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147) (internal quotations omitted). *See also State v. Berisha*, 203 A.3d 169 (N.J. Super. Ct. App. Div. Feb. 7, 2019) ("As for the

---

[13] One other point warrants mention. The Self-Defense Claim in the § 2254 Petition alleges that Petitioner "saw a gun on the victim," which this Court construes as Petitioner's suggestion that the trial judge should have charged on self-defense. (ECF No. 1-1 at 10.) However, Petitioner confessed in his Statement just hours after the incident that he "didn't know" whether Hutchins had a gun. (ECF No. 13-2 at 34.) The state court had the opportunity to weigh Petitioner's credibility on this issue, among others. The state court's determination is entitled to this Court's deference. *See Bradshaw v. Richey,* 546 U.S. 74, 76, (2005) ("a state court's interpretation of state law ... binds a federal court sitting in habeas corpus") (citations omitted); and *Dennis*, 834 F.3d at 281.

judge's failure to sua sponte instruct the jury on self-defense, the use of deadly force is only justifiable when a defendant reasonably believes that such force is necessary to protect himself against death or serious bodily harm"). Under the facts of Petitioner's case, the defense of self-defense would likely have been unsuccessful. Self-defense was not rationally based in trial evidence, as Judge Lester determined. For that reason, the judge's omission of an instruction on self-defense had no capacity to produce an unjust result and did not so infect the trial so as to make it fundamentally unfair. *See Albrecht*, 485 F.3d at 129. Petitioner has not made the requisite constitutional showing of due process deprivation or fundamental unfairness to warrant habeas relief for the Self-Defense Claim.

(2) *State court rulings on the Self-Defense Claim were not contrary to any federal precedent*: As suggested *supra*, the PCR court's decision on the Self-Defense Claim was neither contrary to nor an unreasonable application of United States Supreme Court precedent. *See Estelle*, 502 U.S. at 67-68; *Engle*, 456 U.S. at 107; *Henderson*, 431 U.S. at 155; and *Cupp*, 414 U.S. at 147. Petitioner has not cited, and this Court has not discovered, any United States Supreme Court decisions requiring a sua sponte self-defense instruction when, as here, the defendant waved his *Miranda* rights and gave a custodial confession of facts that reasonably rule out the state statutory elements of self-defense.

For all of these reasons, the Court denies Ground Four.

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim[s], a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Didiano v. Balicki*, Civil Action No. 09-2315 (FLW), 2010 WL 1752191, at *6-7 (Apr. 29, 2010) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ). Here, reasonable jurists would not find

the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## VI.    CONCLUSION

For all of the foregoing reasons, the Petition is denied with prejudice and no certificate of appealability shall issue. An appropriate Order follows.

Dated: _____ , 2019

_____
Madeline Cox Arleo
United States District Judge